In re the Termination of Parental Rights to Torrance P., Jr., a person under the age of 18:

State of Wisconsin, Petitioner-Respondent,†

v.

Shirley E., Respondent-Appellant.

Court of Appeals

*No. 2005AP2752. Submitted on briefs January 26, 2006.
—Decided February 14, 2006.*

2006 WI App 55

(Also reported in 711 N.W.2d 690.)

† Petition to review granted 5-9-06.

194

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Andrea Taylor Cornwall*, assistant state public defender.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *E. Michael McCann*, district attorney, and *Rebecca A. Kiefer*, assistant district attorney, of Milwaukee.

On behalf of Torrance P. a brief was filed by the guardian ad litem *Shelia Hill-Roberts*, of the Legal Aid Society of Milwaukee, Inc.

Before Fine, Curley and Kessler, JJ.

¶ 1. FINE, J. Shirley E. appeals from an order terminating her parental rights to Torrance L. P., Jr. Although in default, she contends that the trial court deprived her of her right to an attorney during the dispositional phase of the proceedings when the State was obligated to prove grounds supporting the order. *See Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶¶ 3, 24–26, 246 Wis. 2d 1, 7, 17–18, 629 N.W.2d 768, 771, 776 (despite birth-parent's default, trial court must hold an evidentiary hearing to determine whether there is "clear and convincing evidence" that there are grounds to consider if termination is in the best interests of the birth-parent's child). We agree, vacate the order, and remand for further proceedings.

¶ 2. In November of 2004, the State filed a petition to terminate Shirley E.'s parental rights to Torrance, who was then a little more than five and one-half years old. According to the petition, Shirley E. was in Michigan, where she was living with her mother and had been "recently paroled." The petition alleged that termination was warranted because Shirley E. failed to assume her parental responsibility for the boy, *see* Wis. Stat. § 48.415(6), and because the child was in continuing need of protection or services, *see* § 48.415(2).

¶ 3. Shirley E. was personally served with the petition in Michigan, and appeared by her then recently-appointed lawyer, Sheila Smith, and by telephone from Michigan. The trial court adjourned the matter and told Shirley E. that she would have "to attend future court hearings" in person, warning her that if she did not appear personally, "your rights will be automatically terminated."[2] Shirley E. never appeared again either in person or by telephone at any of the adjourned dates so patiently agreed-to by the trial court. Her lawyer, however, made all court appearances.

¶ 4. Ultimately, the trial court found Shirley E. to be in default. Nevertheless, Smith told the trial court during a hearing on the termination of the birthfather's parental rights to Torrance that she would "like to have a further role" in the case, apparently to seek a re-opening of the default, noting: "I suspect that [Shirley E.] may be sitting on the stand at some point

---

[2] The trial court later explained that it frames the wording harshly in an attempt to impress upon parents the need to comply with the order to appear: "I give very harsh warnings. I say, 'you will be defaulted and your rights will be automatically terminated.' That is a little harsher than reality."

trying to explain to the Court why she didn't make court appearances." The trial court later told Smith at the hearing that she was "relieved of any further duties in this case," but that it "would entertain a motion to vacate default" if Shirley E. contacted the lawyer.

¶ 5. Some three months later, the trial court, a different judge presiding, heard evidence supporting the petition to terminate Shirley E.'s parental rights to Torrance. To her credit, Smith appeared on Shirley E.'s behalf, despite having been "relieved of any further duties" in the case. She explained her presence:

> [M]y recollection — maybe this is not reflected on the docket — if I did not have any contact with Ms. E[.], that I would be relieved of my duties. Given this is a termination of parental rights case, and I have an obligation to remain in contact with my client because of infective [*sic* –transcriber's error] assistance of counsel, I have had contact with her and discussed with her the reasons she was unable to travel from Michigan to Wisconsin for the purposes of these proceedings.

The trial court noted that Shirley E. was still not present, indicated there was "no motion to vacate the default," and reiterated the earlier trial judge's ruling that Smith was "relieved of any further duty" in the case: "You can leave, Ms. She[il]a Smith." Smith protested that she had an "obligation to stay in contact with my client, which I have," and asserted that Shirley E. "was unemployed for a significant period of time, and because of poverty, she was not able to travel to Wisconsin."[3] The trial court reiterated that Smith's role in the case was over, telling her, "you can go." The tran-

---

[3] The State had represented that there was a Wisconsin arrest warrant for Shirley E., and "[t]hat could be another reason why she's not here." The trial court never made any findings of fact as to *why* Shirley E. never appeared personally,

script indicates that "Ms. Smith exits the courtroom," apparently unwillingly because the transcript records her as first saying, "Great" to which the trial court responded, "Great."

## II.

¶ 6. We need not repeat at any length the significance–both to the parties involved and to society–of an attempt to terminate a person's parental rights to his or her children.

> Terminations of parental rights affect some of parents' most fundamental human rights. At stake for a parent is his or her "interest in the companionship, care, custody, and management of his or her child." Further, the permanency of termination orders "work[s] a unique kind of deprivation. In contrast to matters modifiable at the parties' will or based on changed circumstances, termination adjudications involve the awesome authority of the State to destroy permanently all legal recognition of the parental relationship." For these reasons, "parental termination decrees are among the most severe forms of state action."

*Evelyn C.R.*, 2001 WI 110, ¶ 20, 246 Wis. 2d at 15, 629 N.W.2d at 775 (citations and quoted sources omitted; alteration in original). Thus, "termination proceedings require heightened legal safeguards against erroneous decisions." *Id.*, 2001 WI 110, ¶ 21, 246 Wis. 2d at 15, 629 N.W.2d at 775; *see also State v. Lavelle W.*, 2005 WI App 266, ¶ 2, 288 Wis. 2d 504, 507-508, 708 N.W.2d 698, 699

---

and we express no opinion on that or whether, irrespective of the reason Shirley E. never complied with the trial court's direction that she appear personally, default may or should be vacated.

(termination affects a person's fundamental rights, which require judicial protection). Accordingly, as noted, even where a parent is in "default," the trial court must hold an evidentiary hearing to determine whether there is "clear and convincing evidence" that there are grounds to consider if termination is in the best interests of the birth-parent's child. *Evelyn C.R.*, 2001 WI 110, ¶¶ 3, 24–26, 246 Wis. 2d at 7, 17–18, 629 N.W.2d at 771, 776. Additionally, at least by statute in Wisconsin, a person whose parental rights are at stake must be represented by counsel, unless the person knowingly waives that right. *M.W. & I.W. v. Monroe County Dep't of Human Servs.*, 116 Wis. 2d 432, 437–441, 342 N.W.2d 410, 413–415 (1984); WIS. STAT. § 48.23(2).[4]

█

¶ 7. The requirement that those who seek to terminate a person's parental rights prove by the middle burden of proof, "clear and convincing evidence," that there are grounds to terminate even when the person is in default (thus eliminating the parent's right to a full fact-finding hearing, either before a jury or a judge—*see* WIS. STAT. § 48.31), means, per force, that more needs to be done than a mere "prove up" permitted in the run-of-the-mill civil case when a defendant has defaulted, *see* WIS. STAT. RULE 806.02(5). Significantly, however, even in civil cases not implicating the fundamental rights of birth-parenthood, a defaulting party may appear at the prove-up hearing and "cross-examine the plaintiff's witnesses and present evidence to mitigate or be heard as to the diminution of damages."

---

[4] A parent younger than eighteen years "who appears before the court" may not, however, waive counsel. WIS. STAT. § 48.23(2).

*Carmain v. Affiliated Capital Corp.*, 2002 WI App 271, ¶ 30, 258 Wis. 2d 378, 393, 654 N.W.2d 265, 272. *A fortiori,* a parent in a termination-of-parental-rights case is entitled to no less, unless, of course the adult parent knowingly waives the right to counsel at the *Evelyn C.R.* hearing. *Cf.* WIS. STAT. § 48.23(2) (parent younger than eighteen years "who appears before the court" may not waive counsel).

¶ 8. Although it may very well be that the result here would be the same if Smith had been permitted to participate in the evidentiary hearing required by *Evelyn C.R.*, the reason persons whose parental rights are at stake are entitled to legal representation is because lawyers can point out gaps in the petitioner's syllogism or supporting evidence, if there are any. *See State v. Anson*, 2002 WI App 270, ¶ 9, 258 Wis. 2d 433, 441–442, 654 N.W.2d 48, 51–52 (criminal case). The harmless-error rule advocated here by both the State and Torrance's guardian *ad litem* does not apply to deprivation of counsel. *Holloway v. Arkansas*, 435 U.S. 475, 488, 489 (1978) (" 'The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.' ") ("[T]he assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.' ") (quoted sources omitted) (criminal case). Further, the harmless-error argument is based on their mistaken contention that Smith, had she been allowed to stay for the *Evelyn C.R.* hearing, would have had no right to participate. *See* ¶ 7 of this opinion. Thus, Shirley E. was entitled to have her lawyer present and participate at the *Evelyn C.R.* hearing. Accordingly, we vacate the order terminating Shirley

E.'s parental rights to Torrance, and remand for further proceedings, expressing no view whether, at this late date, Shirley E. may seek to vacate the order of default.

*By the Court.*—Order vacated and cause remanded.