724 N.W.2d 623 (2006)
2006 WI 129
In re the termination of parental rights to TORRANCE P., JR., a person under the age of 18:
State of Wisconsin, Petitioner-Respondent-Petitioner,
v.
Shirley E., Respondent-Appellant.
No. 2005AP2752.
Supreme Court of Wisconsin.
Argued October 12, 2006.
Decided December 13, 2006.
*624 For the petitioner-respondent-petitioner there were briefs and oral argument by Rebecca A. Kiefer, assistant district attorney, with whom on the briefs was E. Michael McCann, district attorney.
For the respondent-appellant there was a brief and oral argument by Andrea Taylor Cornwall, assistant state public defender.
A guardian ad litem brief was filed by Shelia Hill-Roberts, Michael J. Vruno, Jr., and Legal Aid Society of Milwaukee, Inc.
¶ 1 SHIRLEY S. ABRAHAMSON, Chief Justice.
This is a review of a published decision of the court of appeals vacating an order of *625 the circuit court for Milwaukee County, Dennis R. Cimpl, Judge, and remanding the cause for further proceedings.[1] The circuit court's order terminated Shirley E.'s parental rights to her biological son, Torrance P., Jr.
¶ 2 This case presents the issue of whether a circuit court may deny a parent in a termination of parental rights proceeding the statutory right to counsel when the parent has appeared in the proceeding but failed to personally attend a hearing in contravention of a court order and is found in default as a sanction for disobeying the court order.
¶ 3 We affirm the decision of the court of appeals vacating the circuit court's order terminating Shirley E.'s parental rights and remanding the cause to the circuit court. We hold that the circuit court erred in finding Shirley E. in default before conducting an evidentiary hearing to determine whether there was clear and convincing evidence that the grounds for termination existed. Accordingly, the circuit court erred in dismissing Shirley E.'s counsel at the fact-finding phase. We further hold that Shirley E. had a statutory right to counsel at the dispositional phase of the termination of parental rights proceeding, even when the circuit court found her in default as a sanction for her failure to obey the court order to appear personally at the fact-finding phase. The circuit court's error in denying Shirley E. the right to counsel in both the fact-finding and dispositional phases of the termination of parental rights proceeding is prejudicial error.

I
¶ 4 The record provides an account of the life of Torrance P., Jr., who was born on March 22, 1999 with cocaine in his system, to parents who, during his life, were frequently in trouble with the law and were incarcerated at various times. During the first five years of his life, Torrance P., Jr. was shuttled between relatives, neighbors, and foster care in at least three different states. He witnessed his parents abuse each other verbally and physically.
¶ 5 This review does not require us to determine the merits of the circuit court's order terminating Shirley E.'s parental rights, and thus we will not recount the chronology of events upon which the petition for termination is based. The brief facts we state, however, are enough to demonstrate what a sad story this case presents.
¶ 6 This opinion focuses on the procedural aspects of the circuit court's order terminating Shirley E.'s parental rights to Torrance P., Jr. Had the circuit court followed the procedures set forth in the statutes and our case law and allowed Shirley E.'s counsel to participate in both phases of the termination of parental rights proceeding, this case, in all likelihood, would not be before us. Because the circuit court erred, Torrance P., Jr.'s permanent placement has been delayed.
¶ 7 The procedural facts relevant to our review are not in dispute.
¶ 8 On April 15, 2004, a hearing was held before Milwaukee County Circuit Court Judge Carl Ashley to extend the Child in Need of Protection or Services (CHIPS) order that had been entered against Shirley E. in 2002. The order was reduced to writing and warned of the possibility of termination of parental rights. The CHIPS order also contained conditions that Shirley E. had to fulfill in order to regain custody of Torrance P., Jr. She was to maintain a stable residence, have regular *626 visits with and show interest in the child, stay in contact with her case manager, and complete "Alcohol or Other Drug Abuse" (AODA) programs. The CHIPS order also required Torrance P., Jr. to remain in the custody of his foster home.
¶ 9 Although Shirley E. was incarcerated in Michigan at the time, she sent Torrance P., Jr. several letters and completed AODA treatment. On September 9, 2004, Shirley E. was released from prison.
¶ 10 On November 23, 2004, the State of Wisconsin filed a petition for termination of parental rights, claiming Shirley E. had failed to meet the conditions of return contained in the CHIPS order.
¶ 11 An initial plea hearing on the termination of parental rights was held on December 13, 2004, before Milwaukee County Circuit Court Judge Joseph R. Wall. Shirley E., who was in Michigan, did not appear. The hearing was adjourned to February 14, 2005, so the State could obtain service on Shirley E. and arrange counsel for her.
¶ 12 On February 14, 2005, Shirley E.'s recently appointed counsel appeared in person, but Shirley E. did not. Upon her counsel's request, the circuit court allowed Shirley E. to appear by telephone. The State asked the circuit court to find Shirley E. in default. The circuit court instead ordered Shirley E. to appear in person at the next hearing and warned her that if she did not appear personally, she would be found in default.[2] The hearing was adjourned and rescheduled for March 8, 2005, so counsel would have an opportunity to confer with Shirley E.
¶ 13 On March 8, 2005, Shirley E.'s counsel appeared in person, but Shirley E. did not. The State asked the circuit court to find Shirley E. in default. The circuit court found Shirley E. in default; the finding was a sanction for the parent's failure to obey the court order to appear in person.[3] A circuit court has both inherent *627 authority and statutory authority under Wis. Stat. §§ 802.10(7), 804.12(2)(a), 805.03 (2003-04)[4] to sanction a party for failing to obey a court order.[5]
¶ 14 The circuit court stated that it would entertain a motion to vacate the default if Shirley E. personally appeared. The circuit court scheduled the hearings for the fact-finding and dispositional phases of the termination of parental rights procedure for April 1, 2005.
¶ 15 At the April 1, 2005 proceeding Shirley E.'s counsel appeared in person, but Shirley E. did not. Shirley E.'s counsel informed the circuit court that she had not spoken with Shirley E. because Shirley E. was without telephone service for several weeks. Counsel explained that Shirley E. had mentioned that she had had trouble traveling in the past because of lack of funds. The State remarked that Shirley E. had an outstanding warrant in Wisconsin for her arrest. The circuit court announced that if Shirley E. appeared in person, it would entertain a motion to vacate the default; otherwise, the default would stand. The matter was then adjourned until May 6, 2005.
¶ 16 On May 6, 2005, Shirley E.'s counsel appeared in person, but Shirley E. did not. The circuit court ruled that Shirley E. remained in default. The circuit court and Shirley E.'s counsel discussed counsel's role in the case, with counsel requesting a further role in the proceedings.[6] At the end of the hearing, the circuit court informed Shirley E.'s counsel that counsel was "relieved of any further duties in this case."[7] The circuit court stated that it would entertain a motion to vacate the default if Shirley E. communicated with her counsel. The termination of parental *628 rights proceeding was rescheduled for August 1, 2005.
¶ 17 At the termination of parental rights proceeding on August 1, 2005, Shirley E.'s counsel appeared in person, but Shirley E. did not. Milwaukee County Circuit Court Judge Dennis R. Cimpl presided at this hearing. The circuit court explained that at the May 6, 2005 hearing Judge Wall had reaffirmed Shirley E.'s default status and relieved her counsel of any further duties. Although Shirley E.'s counsel informed the circuit court during the August 1 hearing that she had since spoken with her client and wanted to remain to represent her client, the circuit court once again relieved counsel of her duties and dismissed her from the courtroom.[8]
¶ 18 The circuit court then conducted hearings on both phases of the termination of parental rights proceeding without Shirley E. or her counsel present. The State presented only one witness, the most recent case manager assigned to Torrance P., Jr. Based on the case manager's testimony and the petition, the circuit court found that Shirley E. had failed to assume parental responsibility under Wis. Stat. § 48.415(6) (one of the grounds for termination of parental rights) and that Torrance P., Jr. was in continuing need of protection or services under Wis. Stat. § 48.415(2) (another ground for termination of parental rights). The circuit court found Shirley E. "unfit" under § 48.424(4). The circuit court then proceeded to the dispositional phase and ruled that it was in Torrance P., Jr.'s best interests that Shirley E.'s parental rights be terminated.[9]See § 48.426(3) and § 48.427.
*629 ¶ 19 On August 26, 2005, Shirley E. appealed the circuit court's order. She claimed she was deprived of the right to counsel and that there was insufficient evidence in the record to support the findings on the two statutory grounds for termination of parental rights.
¶ 20 On February 14, 2006, the court of appeals vacated the circuit court's order terminating Shirley E.'s parental rights, concluding that Shirley E. was erroneously deprived of the right to counsel. The court of appeals did not reach the question of the sufficiency of the evidence. Because we affirm the decision of the court of appeals vacating the order of the circuit court, this court need not address the sufficiency of the evidence issue either.

II
¶ 21 This case presents the issue of whether a circuit court may deny a parent in a termination of parental rights proceeding the statutory right to counsel when the parent has appeared in the proceeding but failed to personally attend a hearing in contravention of a court order and is found in default as a sanction for disobeying the court order. This issue raises a question of law which this court determines independently of the circuit court and the court of appeals, but benefiting from their analyses.

III
¶ 22 Before examining the right to counsel in a termination of parental rights proceeding, we briefly discuss the nature of a termination of parental rights proceeding to place the statutory right to counsel in proper context.
¶ 23 This court has stated numerous times that termination of parental rights proceedings "`wor[k] a unique kind of deprivation.' . . . [They] involve the awesome authority of the State `to destroy permanently all legal recognition of the parental relationship.'"[10] A termination of parental rights proceeding implicates a parent's most fundamental rights.[11] At stake is a parent's "interest in the companionship, care, custody, and management of his or her child. This court has recognized that . . . the integrity of the family is subject to constitutional protection through the due process clause of the state and federal constitutions."[12]
¶ 24 Termination of parental rights proceedings require heightened legal safeguards to prevent erroneous decisions.[13] This court has consistently recognized that "[a] parent's right to the custody and care of his or her children is an extremely important interest that demands protection and fairness."[14]
¶ 25 The Wisconsin's Children's Code, Wis. Stat. ch. 48, sets forth a "panoply of substantial rights and procedures to assure that the parental rights will not be terminated precipitously, arbitrarily, or capriciously, but only after a deliberative, *630 well considered, fact-finding process utilizing all the protections afforded by the statutes unless there is a specific, knowledgeable, and voluntary waiver."[15]
¶ 26 When a parent, like Shirley E., contests a petition for termination of parental rights, the circuit court must engage in a two-step process to determine whether to terminate parental rights.[16]
¶ 27 The first step, the fact-finding phase, consists of an evidentiary hearing to determine whether adequate grounds exist for the termination of parental rights.[17] There are eleven statutory grounds on which a petition for termination can be based. Wis. Stat. § 48.415. The petitioner must demonstrate by clear and convincing evidence the existence of the alleged grounds for termination.[18] If the petitioner satisfactorily carries the burden of persuasion, the circuit court "shall find the parent unfit." Wis. Stat. § 48.424(4). During this phase, "the parent's rights are paramount."[19]
¶ 28 The second step, the dispositional phase, consists of another evidentiary hearing in which the circuit court determines whether termination of parental rights is in the child's best interests.[20] The child's interests are paramount at this stage of the proceeding, but the parent has a right to present evidence and be heard.[21] If the circuit court finds during this dispositional phase that the evidence does not warrant the termination of parental rights, the circuit court need not terminate the parent's rights. Wis. Stat. §§ 48.424(4), 48.427(2).
¶ 29 We turn next to the statutory right to counsel which Shirley E. claims she was denied.

IV
¶ 30 One of the procedural safeguards the legislature has afforded to parents in termination of parental rights proceedings is the right to counsel. The legislature placed great emphasis on the necessity of counsel. Wisconsin Stat. § 48.23(2) provides that any parent who appears before the circuit court in an involuntary termination of parental rights proceeding shall be represented by counsel. A parent aged 18 years or older (and Shirley E. is over 18 years of age) can waive the assistance of counsel, but only if the circuit court finds that the waiver is knowing and voluntary. Minor parents cannot waive the right to counsel.
¶ 31 The right to counsel statute, Wis. Stat. § 48.23(2), states in relevant part:
If a proceeding involves a contested adoption or the involuntary termination of parental rights, any parent 18 years old or older who appears before the court shall be represented by counsel; but the parent may waive counsel provided the court is satisfied such waiver is knowingly and voluntarily made.
*631 ¶ 32 Although not physically present, Shirley E. "appeared" in the proceeding by counsel.[22] Thus, Wis. Stat. § 48.23(2) comes into effect.
¶ 33 "Counsel," as defined by Wis. Stat. § 48.23(1g), "means an attorney acting as adversary counsel who shall advance and protect the legal rights of the party represented. . . ." The circuit court may appoint counsel for any party unless the party has or wishes to retain counsel of his or her own choosing.[23]
¶ 34 Shirley E. claims that her statutory right to counsel was violated when the circuit court dismissed her counsel from the August 1, 2005 proceeding, preventing the attorney from representing the then-absent Shirley E. during both the fact-finding and the dispositional phases of the termination of parental rights proceeding.
¶ 35 This case is not the first time we have been asked to examine the statutory right to counsel under Wisconsin's Children's Code, chapter 48. Because "[t]he statutory direction is unequivocal: A parent has the right to representation in court unless there is a waiver,"[24] and because counsel plays a significant role in protecting parents' interests and ensuring a fair process, we have enumerated several interrelated principles regarding the right to counsel in chapter 48 proceedings.
¶ 36 One principle is that counsel must be present in court and available to participate. Mere "engagement" of counsel, that is, the contract to represent, without counsel's attendance at the proceedings, does not fulfill the statutory requirement that a parent shall be represented by counsel.[25]
¶ 37 A second principle is that counsel has a duty to provide his client with zealous, competent and independent representation."[26]
¶ 38 A third principle is that the statutory right to counsel includes the right to effective assistance of counsel: "It is axiomatic that the right to be represented by appointed counsel is worthless unless that right includes the right to effective counsel. Representation by counsel means more than just having a warm body with `J.D.' credentials sitting next to you during the proceedings."[27]
¶ 39 A fourth principle is that the circuit court has a duty "to assure there was representation in court unless there was a knowledgeable and voluntary waiver."[28]
¶ 40 The State, however, now wishes us to interpret the statutory right to counsel narrowly. The State argues that the statutory right to counsel is conditional upon a party's appearing in person at the proceeding and that the right to counsel is forfeited once the circuit court finds the parent in default as a sanction for disobeying a court order to appear personally.
*632 ¶ 41 We do not accept the State's position for three reasons. First, Wis. Stat. § 48.23 does not provide a right to counsel only to parents who appear in person. Second, case law clearly bars a circuit court from finding a parent in default before taking evidence on the ground alleged for the termination of parental rights. Accordingly, the circuit court's finding of default in the present case was erroneous, and the circuit court had no power to bar the parent or parent's counsel from participation at the fact-finding stage. Third, in any event, the circuit court erred in barring counsel from the disposition phase.
¶ 42 We will discuss each of these reasons in turn.
¶ 43 First, Wis. Stat. § 48.23 does not provide a right to counsel only to parents who appear in person. Contrary to the State's argument, nothing in § 48.23 provides that the right to counsel is conditional upon the parent's appearance in person at a termination of parental rights proceeding. The legislature intended to be expansive in its according of legal rights to parents.[29] The absence of an explicit and unambiguous requirement in § 48.23 that a parent appear in person to maintain a right to counsel means that a parent's right to counsel is not contingent upon the parent's personal attendance at the proceeding.
¶ 44 If the legislature wanted the right to counsel to be contingent upon a parent's appearance in person, it could have expressly stated so. The legislature, in constructing chapter 48, knew how to require personal attendance at a termination of parental rights proceeding. For example, Wis. Stat. § 48.41(2)(a) allows a parent to voluntarily consent to a petition to terminate parental rights, but only if "[t]he parent appears personally at the hearing and gives his or her consent to the termination of his or her parental rights" (emphasis added).
¶ 45 Furthermore, the State's position contradicts the legislative direction that the Children's Code is to be liberally construed to effect its objectives. Wis. Stat. § 48.01(2). An objective of judicial proceedings is that parties are assured fair hearings and that their legal rights are recognized and enforced. Wis. Stat. § 48.01(1)(a).
¶ 46 In sum, the statute directs the right to counsel, and no statutory provision deprives a parent's counsel from presenting evidence and arguing at a termination of parental rights proceeding when the parent has "appeared" but has not appeared in person.
¶ 47 Second, dismissing Shirley E.'s counsel and refusing to allow counsel to participate on behalf of Shirley E. at the fact-finding stage of the termination of parental rights proceeding contravenes Evelyn C.R. v. Tykila S., 2001 WI 110, ¶ 17, 246 Wis.2d 1, 629 N.W.2d 768.
¶ 48 In Evelyn C.R., counsel appeared for the mother at a termination of parental rights proceeding. The circuit court nevertheless entered a default judgment against the mother when the mother failed to appear in person at the fact-finding phase after the circuit court had ordered her attendance. The circuit court entered a default judgment without first taking evidence sufficient to support the alleged grounds for termination.
¶ 49 This court in Evelyn C.R. recognized that Wis. Stat. § 806.02(5), the default judgment statute, did not control, inasmuch as the mother had "appeared" by *633 counsel.[30] The court stated that a circuit court could, however, find a parent in default as a sanction for failing to obey a court order to appear. The Evelyn C.R. court nevertheless concluded that the circuit court could not enter a default judgment without holding a fact-finding hearing and finding the alleged grounds for termination by clear and convincing evidence.[31] The legislative goal of securing a fair procedure is not served unless a parent is given the opportunity to be heard in a meaningful time and in a meaningful manner.[32] The circuit court has a duty and obligation to protect the parent's right to participate meaningfully in a termination of parental rights proceeding.[33] This court concluded that by entering a default judgment without first taking evidence to support the grounds for termination of parental rights, "the circuit court [in Evelyn C.R.] failed to comply with the constitutional and statutory requirements for termination of parental rights."[34]
¶ 50 In the present case, as in Evelyn C.R., the circuit court erroneously found the mother in default before taking any evidence on the grounds alleged for termination of her parental rights. Because the circuit court should not have found Shirley E. in default before hearing evidence in the fact-finding phase, Shirley E.'s attorney should not have been barred from participating. Thus, the circuit court violated Shirley E.'s statutory right to counsel in the fact-finding phase.
¶ 51 In the present case, in contrast to Evelyn C.R., the circuit court heard evidence in the fact-finding phase after it found the mother in default and dismissed the mother's counsel. But the circuit court heard only the State's evidence, having erroneously barred Shirley E. by her attorney from challenging the State's evidence and presenting her evidence at the fact-finding phase. As a result of the circuit court's ruling dismissing Shirley E.'s counsel, the circuit court precluded counsel from participating on Shirley E.'s behalf.
¶ 52 The United States Supreme Court has commanded, "When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures."[35] By depriving Shirley E. of her statutory right to be heard through her counsel in a meaningful time and in a meaningful manner, the circuit court in the present case deprived Shirley E. of fair procedures.
¶ 53 Third, even if we were to view the circuit court's finding of Shirley E. in default as valid, Shirley E. could still appear at the disposition phase in person or by counsel. The circuit court thus erred in dismissing Shirley E.'s counsel from this hearing.
*634 ¶ 54 Wisconsin Stat. § 48.427(1), which governs the dispositional phase of a termination of parental rights proceeding, provides that in the dispositional phase, "[a]ny party may present evidence relevant to the issue of disposition, including expert testimony, and may make alternative dispositional recommendations to the court." This language is not qualified and its directive is clear. By statute, Shirley E. and her counsel had a right to participate at the dispositional phase.[36]
¶ 55 In Evelyn C.R., the circuit court permitted the defaulted mother to present evidence during the dispositional phase of the termination of parental rights proceeding. The circuit court took the mother's testimony by phone and considered it in rendering its disposition. This court, in reviewing and affirming the circuit court's actions in Evelyn C.R., relied heavily on the defaulted mother's participation in this later dispositional hearing. We held that the circuit court's error in finding her in default before conducting an evidentiary hearing was harmless error because the circuit court did hear the mother at the later dispositional phase and did reaffirm its finding on the ground for termination on the basis of her testimony.[37] Accordingly, allowing Shirley E. or Shirley E.'s counsel to participate in the dispositional phase even after a finding of default is consistent with this court's decision in Evelyn C.R.
¶ 56 For these reasons, we hold that Shirley E. maintained her statutory right to counsel throughout this termination of parental rights proceeding, even after the circuit court found her in default for failing to obey the circuit court order to personally attend the hearing.
¶ 57 The State also argues that Shirley E., a parent over 18 years of age, has waived her right to counsel by not appearing personally. We can quickly dismiss this argument. Wisconsin Stat. § 48.23(2) explicitly requires that any waiver of counsel must be knowing and voluntary. As we determined in M.W. v. Monroe County Department of Human Services, it is "the duty of the court to determine by careful questioning that the waiver of counsel[ ] . . . is knowledgeable and voluntary."[38] The circuit court conducted no such inquiry here.
¶ 58 We turn now to consider the impact of the circuit court's error.

V
¶ 59 A termination of parental rights proceeding is, as we have stated previously, not the ordinary civil action. At stake here are fundamental rights. Termination proceedings deprive parents of a significant liberty interest in their children.[39]
¶ 60 The statutory right to the assistance of counsel in a termination of parental rights proceeding is, according to the Wisconsin legislature, essential to a fair proceeding.
*635 ¶ 61 In criminal cases, in which counsel is viewed as essential to fair proceedings, when a litigant has been totally deprived of the presence and assistance of an attorney during a critical stage in the proceeding, reversal is automatic.[40] A harmless error analysis is not applied in a criminal case because counsel is critical to a fair trial and no one can reliably determine the level of prejudice arising from the denial of a right to counsel.
¶ 62 Courts have long recognized that the total deprivation of counsel in criminal proceedings is a "structural error."[41] A structural error is a defect that upsets the framework within which trial proceeds; it is not merely an error in the trial process.[42] Consequently, "[s]uch errors . . . `necessarily render a trial fundamentally unfair.'"[43] In other words, structural errors "seriously affect the fairness, integrity or public reputation of judicial proceedings"[44] and are so fundamental that they are considered per se prejudicial.[45]
¶ 63 Depriving a parent of the statutory right to counsel in a termination of parental rights proceeding deprives the parent of a basic protection without which, according to our legislature, a termination of a parental rights proceeding cannot reliably serve its function. The fairness and integrity of the judicial proceeding that the legislature has established for termination proceedings has been placed in doubt when the statutory right to counsel is denied a parent. Accordingly, the denial of the statutory right to counsel in the present case constitutes structural error.
¶ 64 We thus hold that it was prejudicial error per se for the circuit court to dismiss Shirley E.'s attorney from the proceedings and to prevent counsel from participating in the termination of parental rights proceeding.
¶ 65 For the foregoing reasons, we hold that the circuit court erred in finding Shirley E. in default before conducting an evidentiary hearing to determine whether there was clear and convincing evidence that the grounds for termination existed. Accordingly, the circuit court erred in dismissing Shirley E.'s counsel at the fact-finding stage. We further hold that Shirley E. had a statutory right to counsel at the dispositional phase of the termination of parental rights proceeding, even when the circuit court found her in default as a sanction for her failure to obey the court order to appear personally at the fact-finding stage. The circuit court's error in denying Shirley E. the right to counsel in both the fact-finding and dispositional phases of the termination of parental rights proceeding is prejudicial error. The cause is remanded to the circuit court.
The decision of the court of appeals is affirmed.
¶ 66 DAVID T. PROSSER, J. (concurring).
There is no dispute about the importance of parental rights. When the state or a private individual petitions to terminate a parent's interest in her child, the *636 court must follow proper procedures so that the parent's rights are fully protected.
¶ 67 At the same time, however, every case involving a proposed termination of parental rights affects the interests of at least one other personthe child. A rational legal system must not become so fixated on a parent's procedural rights that it forgets that a child's life may be at stake. In criminal law, we are familiar with Blackstone's maxim that "It is better that ten guilty persons escape than one innocent suffer." In termination cases, we should question whether it is better that ten innocent children suffer than that one irresponsible parent forfeit her procedural rights.
¶ 68 I concede that Shirley E. was not accorded her full procedural rights. Her attorney should have been permitted to participate in the disposition hearing because, under the statute, any party may present evidence relevant to the issue of disposition and make alternative dispositional recommendations to the court. Wis. Stat. § 48.427(1). The court may receive testimony from diverse witnesses, and it should welcome input on the best interests of the child.
¶ 69 However, requiring that Shirley E.'s attorney participatefullyin a fact-finding hearing on grounds for unfitness presents a different question. In this case, the circuit court was confronted with a mother's protracted indifference to the welfare of her child. The record is devoid of evidence that the mother made any real effort to preserve the companionship, care, custody, or management of her child, and the most compelling proof of this is her consistent failure to show up for hearings. In the absence of any sensible explanation or excuse for the mother's repeated non-appearance, the circuit court found default. The court clearly indicated that it would entertain a motion to vacate the default if the mother appeared. On these facts, the circuit court cannot be said to have unfairly disregarded the mother's interests.
¶ 70 Hence, this court's decision to protect a parent who did not care enough to appear and defend herself, seriously undercuts the authority of circuit judges to enforce their orders. In remanding the case for new hearings on both disposition and grounds, the court is emphasizing form over substance. I write separately to record my dissatisfaction with the state of the law and with the result in this case.

ANALYSIS
¶ 71 In 2001 this court heard and decided Evelyn C.R. v. Tykila S., 2001 WI 110, 246 Wis.2d 1, 629 N.W.2d 768. The case is cited as controlling authority in the majority opinion, and thus it invites reexamination.
¶ 72 In Evelyn C.R., a paternal grandmother sought to terminate the biological mother's rights to her son. The child had lived with the grandmother for virtually his entire life; the grandmother had been appointed as his guardian when the boy was five. When the boy was seven, the grandmother filed a petition to terminate the mother's parental rights so that she could adopt the child. Id., ¶¶ 4, 5.
¶ 73 At the time of the petition, the mother (Tykila) had not been in contact with her son for five years. The grandmother alleged that the mother had "abandoned" the child, under Wis. Stat. § 48.415(1)(a)3. (1997-98). The court ordered the parties to obtain counsel and scheduled a fact-finding hearing before a 12-person jury. Id., ¶¶ 6, 7.
¶ 74 The mother failed to appear at the hearing. "The court did manage to reach Tykila by phone, but, in light of the fact that the jury would be required to determine whether Tykila had abandoned [the *637 child], the court expressed great apprehension about holding the hearing without Tykila's physical presence." Id., ¶ 8.
¶ 75 The mother's attorney objected to going forward in the absence of the mother. The court offered to hold a court trial rather than a jury trial, but "Tykila refused the court's offers and insisted that the hearing be held before a jury." Id., ¶ 8. The grandmother then moved for a default judgment. The court denied that motion and released the jury but issued a stern oral and written order that Tykila must appear in person at 9:00 a.m. on April 3, 2000, and at "all subsequent proceedings held in this case" or face a potential default judgment. Id.
¶ 76 On April 3 Tykila failed to appear as required by the order. The grandmother moved for default judgment, the child's guardian ad litem voiced no objection, and Tykila's attorney stated: "I would object and waive argument." Id., ¶ 9. Thereafter, the court granted the motion for default judgment and found, based on the allegations in the petition, that the mother had abandoned the child and was unfit. Id.
¶ 77 On appeal here, the issue presented was whether the circuit court erred in entering a default judgment on the issue of abandonment without first taking evidence sufficient to support a finding of abandonment by clear and convincing evidence. This court concluded that the circuit court erred. The court stated:
Tykila concedes that the circuit court had the authority to enter a default judgment against her as a sanction for failing to comply with the court order for personal appearance. However, Tykila contends that this authority did not relieve the circuit court of its constitutional and statutory duty to find by clear and convincing evidenceprior to finding her to be an unfit parentthat she had abandoned [the child].
Id., ¶ 16.
¶ 78 In adopting this analysis, our opinion embraced an obvious inconsistency. On the one hand, the opinion trumpets a court's discretion to enter a default judgment as a sanction, stating:
[A] circuit court has both inherent authority and statutory authority under Wis. Stat. §§ 802.10(7), 804.12(2)(a), and 805.03 to sanction parties for failing to obey court orders. Pursuant to this authority, a circuit court may enter a default judgment against a party that fails to comply with a court order.
Id., ¶ 17 (citation omitted). See Wis. Stat. §§ 802.10(7), 804.12(2)(a), 805.03.
¶ 79 On the other hand, the opinion concludes that a court simply has no discretion to enter a default judgment on grounds to terminate parental rights "without first taking evidence sufficient to support such a finding." Evelyn C.R., 246 Wis.2d 1, ¶ 19, 629 N.W.2d 768.
¶ 80 In short, this court made it clear that the circuit court could not enter a default judgment as a sanction without a fact-finding hearing as well as clear and convincing evidence to support its decision. Id., ¶ 24. The court said:
[T]he circuit court may . . . determine that a party's action or inaction provides adequate cause for sanctions against that party. But such cause does not allow the court to dispense with any independent constitutional or statutory burden of proof that must be satisfied prior to entering a judgment or order.
Id., ¶ 25.
¶ 81 In Evelyn C.R., the circuit court took testimony on the fitness of the parent at a later dispositional hearing and made findings at that hearing to support *638 grounds for termination. Thus, the circuit court corrected its alleged error, and this court upheld the termination of parental rights. Because we unanimously agreed to the termination, we failed to confront the inconsistency in an analysis that authorizes a court to enter a default judgment but only after it hears testimony and finds clear and convincing evidence to support the judgment. The present case accentuates this inconsistency.
¶ 82 The respondent here, Shirley E., never came to court. On November 23, 2004, the State filed a Petition for Termination of Parental Rights. Shirley E. acknowledged receipt of a certified mailing conveying the petition and notice of hearing. A legal notice of hearing was also published in a Michigan newspaper on December 1, 2004. Shirley E. did not appear at the December 13 hearing or at subsequent court hearings on February 14, March 8, April 1, May 6, and August 1, 2005. The court did reach Shirley E. by telephone on February 14 and strongly admonished her that "failure to personally appear at the next scheduled court date and all subsequent scheduled court dates WILL result in a default finding." Thus, when Shirley E. failed to appear on March 8, she violated the appearance order. The court sanctioned Shirley E. by finding her in default.
¶ 83 The gist of the majority opinion is to reaffirm the decision in Evelyn C.R. that a circuit court has no inherent or statutory authority to enter a true default judgment as a sanction in a termination of parental rights case. It must always take evidence to support the judgment and make findings on the requisite burden of proof. But more important, the decision determines that the failure of a parent to appear in person may not be sanctioned to limit the role of the parent's attorney in the fact-finding proceedings. The attorney may challenge the state's evidence by motion, objection, or cross-examination, or present alternative evidence, and even demand a jury trial.[1] A parent's defiance or indifference, as reflected in the parent's consistent non-appearance in court, does not work any forfeiture of the parent's rights.
¶ 84 This regimen effectively denies the circuit court authority to sanction an uncooperative parent. It may create an incentive in some cases for the parent not to appear. In my view, this is not satisfactory for the child, the prospective adoptive parent or parents, the circuit court, the state, or the taxpaying public. For the sake of the affected children, we must do better.
¶ 85 I am authorized to state that Justices JON P. WILCOX and PATIENCE DRAKE ROGGENSACK join this opinion.
NOTES
[1] State v. Shirley E., 2006 WI App 55, 290 Wis.2d 193, 711 N.W.2d 690.
[2] The circuit court admonished Shirley E., stating, "[A]nd, of course, we need to have you here, so we're going to get a new date in this case. . . . But remember, you must appear. If you don't appear, you will be defaulted. And what that means is that your rights will be automatically terminated, okay?" R.42:5.

The circuit court later explained at the hearing on March 8, 2005 that it warns parents harshly to ensure they understand the need to appear in person. It stated that the warnings are "a little harsher than reality." Shirley E. was not present at this hearing but her counsel was. R.43:4.
[3] The circuit court did not order a default under Wis. Stat. § 806.02(5). Shirley E. had "appeared" at the hearing by her attorney. Evelyn C.R. v. Tykila S., 2001 WI 110, ¶ 17, 246 Wis.2d 1, 629 N.W.2d 768.

The circuit court found Shirley E. in default as a sanction for failing to comply with its order to attend a hearing in person. Before a circuit court may enter a default on the ground that a party failed to comply with a court order, the party's conduct must be egregious or in bad faith. Evelyn C.R., 2001 WI 110, ¶ 17, 246 Wis.2d 1, 629 N.W.2d 768; Johnson v. Allis Chalmers Corp., 162 Wis.2d 261, 276, 470 N.W.2d 859, 864-65 (1991). The circuit court made no finding that Shirley E.'s conduct was egregious or in bad faith before finding her in default. The circuit court ordered the sanction of default on March 8, 2005the first time Shirley E. failed to appear in person after being ordered to do so on February 14, 2004. Shirley E. ultimately failed to attend personally three other hearings in a five month period; her attorney attended all of them. The circuit court failed to consider Shirley E.'s attorney's explanations about why Shirley E. was not present in person, including difficulty of coming to Wisconsin from out of the state, her status as a parolee, and her lack of funds. A circuit court has discretion in imposing a sanction for noncompliance with an order but must make the appropriate findings to support a sanction of default.
The issue of the egregious nature of Shirley E.'s conduct has not been raised in this court, and we will not address it further.
[4] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[5] The statutes provide in relevant part:

Wis. Stat. § 802.10(7):
Sanctions. Violations of a scheduling or pretrial order are subject to ss. 802.05, 804.12 and 805.03.
Wis. Stat. § 804.12(2)(a):
If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
1. An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
2. An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the disobedient party from introducing designated matters in evidence;
3. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
4. In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical, mental or vocational examination.
Wis. Stat. § 805.03:
For failure of any . . . party to comply with the statutes governing procedure in civil actions or to obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under § 804.12(2)(a).
[6] The court: Ms. Smith, did you have any further role?

Ms. Smith: I'd like to have a further role, yes.
The court: Your client has been defaulted.
Ms. Smith: I know she has. But she's actually been in contact with me and I suspect that she may be sitting on the stand at some point trying to explain to the Court why she didn't make court appearances.
The court: Okay. Well, well, let's go on.
R.45:13.
[7] R.45:31.
[8] The court: This matter is here on a petition for termination of parental rights. In reviewing the judgment role, it appears on May 6th Judge Wall reaffirmed mom was in default status and relieved Ms. Smith of any further duty.

[The State]: That's correct, judge.
Ms. Smith: And, Your Honor, my recollectionmaybe this is not reflected on the docketif I did not have any contact with [Shirley E.], that I would be relieved of my duties. Given this is a termination of parental rights case, and I have an obligation to remain in contact with my client because of infective [sic] assistance of counsel, I have had contact with her and discussed with her the reasons she was unable to travel from Michigan to Wisconsin for the purposes of these proceedings.
The court: But she's not here today.
[The State]: Judge, she has not appeared in person on this case at all.
The court: She's not here today. There is no motion to vacate the default. I'll have to go with Judge Wall's ruling of May 6th in that, Ms. Smith, you're relieved of any further duty. You can leave, Ms. Shelia [sic] Smith.
Ms. Smith: Correct. Your Honor, again because I think I do have obligation to stay in contact with my client, which I have, she lives in state of Michigan, she was unemployed for a significant period of time, and because of poverty, she was not able to travel to Wisconsin. The State is incorrect in that Ms. [E.] did make an appearance by telephone in reference to this matter, and she has been in contact with me.
[The State]: Judge
The court: No, wait. Judge Wall's ruled. I've ruled. . . . We don't need any more argument.
Ms. Smith:but I have to make a record.
The court: I know you've got to make an argument, you've got to make a record. You did. Now, you can go.
Ms. Smith: Great.
The court: Great.
(Whereupon, Ms. Smith exits the courtroom.)
R. 47:3.
[9] These hearings also involved a separate petition to terminate the parental rights of the biological father. Like Shirley E., he failed to appear at several hearings and a default was entered against him. Although he successfully moved to vacate the default and was allowed to provide testimony through a deposition, the circuit court found him to be unfit and terminated his parental rights. The termination of the father's parental rights is not before the court today and will not be addressed further.
[10] M.L.B. v. S.L.J., 519 U.S. 102, 127-28, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) (quoted sources omitted).
[11] Evelyn C.R., 246 Wis.2d 1, ¶ 20, 629 N.W.2d 768.
[12] T.M.F. v. Children's Serv. Soc'y, 112 Wis.2d 180, 184, 332 N.W.2d 293 (1983).
[13] Evelyn C.R., 246 Wis.2d 1, ¶ 21, 629 N.W.2d 768.

"The profound consequences of termination have necessitated the development of detailed statutory requirements." Sheboygan County HHS v. Julie A.B., 2002 WI 95, ¶ 23, 255 Wis.2d 170, 648 N.W.2d 402.
[14] A.S. v. State, 168 Wis.2d 995, 1003, 485 N.W.2d 52 (1992).
[15] M.W. v. Monroe County Dep't of Human Servs., 116 Wis.2d 432, 437, 342 N.W.2d 410, 413-14 (1984) (modified in part on other grounds by Steven V. v. Kelley H., 2004 WI 47, 271 Wis.2d 1, 678 N.W.2d 856).
[16] Waukesha County Dep't of Soc. Servs. v. C.E.W., 124 Wis.2d 47, 60, 368 N.W.2d 47 (1985).
[17] Wis. Stat. § 48.424; Evelyn C.R., 246 Wis.2d 1, ¶ 22, 629 N.W.2d 768.
[18] Id.
[19] Id.
[20] C.E.W., 124 Wis.2d at 60, 368 N.W.2d 47.
[21] Wis. Stat. § 48.427(1)-(1m); Evelyn C.R., 246 Wis.2d 1, ¶ 23, 629 N.W.2d 768.
[22] Id., ¶ 17.
[23] Wis. Stat. § 48.23(4),(5).
[24] M.W., 116 Wis.2d at 441, 342 N.W.2d 410 (the court has stated that the legislature, in enacting Chapter 48, "intended to be expansive in its according of legal rights to parents even as it was expansive in providing that children and their rights be fully protected.").

"The legislature placed great emphasis upon the necessity of counsel. The legislative edict is that, in termination proceedings, `any parent . . . shall be represented by counsel.'" Id. at 437, 342 N.W.2d 410.
[25] Id. at 438, 342 N.W.2d 410.
[26] E.H. v. Milwaukee County, 151 Wis.2d 725, 737, 445 N.W.2d 729 (Ct.App.1989).
[27] A.S., 168 Wis.2d at 1003, 485 N.W.2d 52.
[28] M.W., 116 Wis.2d at 438, 342 N.W.2d 410.
[29] Id. at 441, 342 N.W.2d 410.
[30] Evelyn C.R., 246 Wis.2d 1, ¶ 17, 629 N.W.2d 768.
[31] Id., ¶ 25:

Where, as in the present case, the constitution and statutory code require a showing of proof before the circuit court can enter a particular judgment or order, the circuit court cannot enter the judgment or order without the appropriate showing. To be sure, the circuit court may, as it did here, determine that a party's action or inaction provides adequate cause for sanctions against that party. But such cause does not allow the court to dispense with any independent constitutional or statutory burden of proof that must be satisfied prior to entering a judgment or order.
[32] Brown County v. Shannon R., 2005 WI 160, ¶ 56, 286 Wis.2d 278, 706 N.W.2d 269.
[33] R.G. v. F.C., 152 Wis.2d 159, 167, 448 N.W.2d 239 (1989).
[34] Evelyn C.R., 246 Wis.2d 1, ¶ 19, 629 N.W.2d 768.
[35] Santosky v. Kramer, 455 U.S. 745, 753-54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
[36] The circuit court had the power to sanction Shirley E. for failing to obey its order to appear but the sanction imposed here was inappropriate.
[37] At the dispositional phase in Evelyn C.R., the mother appeared and the circuit court permitted her to speak. The circuit court considered her testimony and then restated its finding of unfitness and ruled on the disposition. This court concluded that because the circuit court had taken and considered evidence sufficient to support its finding of abandonment, the circuit court's procedural error was harmless. Evelyn C.R., 246 Wis.2d 1, ¶ 36, 629 N.W.2d 768.
[38] M.W., 116 Wis.2d at 439, 342 N.W.2d 410.
[39] Santosky, 455 U.S. at 759, 102 S.Ct. 1388.
[40] Holloway v. Arkansas, 435 U.S. 475, 489, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).
[41] Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (internal citations omitted); State v. Harvey, 2002 WI 93, ¶ 37, 254 Wis.2d 442, 647 N.W.2d 189; State v. Gordon, 2003 WI 69, ¶ 35, 262 Wis.2d 380, 663 N.W.2d 765.
[42] Neder, 527 U.S. at 8, 119 S.Ct. 1827.
[43] Id. (quoted source omitted).
[44] Id. (quoting Johnson v. United States, 520 U.S. 461, 470, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).
[45] Neder, 527 U.S. at 8, 119 S.Ct. 1827.
[1] It is curious that the court eviscerates default judgments against parents who do not comply with court orders to appear, but validates summary judgments against parents who do appear and request a jury trial. See Steven V. v. Kelley H., 2004 WI 47, 271 Wis.2d 1, 678 N.W.2d 856.