COURT OF APPEALS
DECISION
DATED AND FILED

May 3, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP75**

Cir. Ct. No. 2020TP23

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.K.V., A PERSON UNDER THE AGE OF 18:

WINNEBAGO COUNTY DEPARTMENT OF HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

N.J.D.,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Winnebago County: DANIEL J. BISSETT, Judge. *Reversed and cause remanded for further proceedings*.

¶1    GROGAN, J.[1]    N.D.[2] appeals from an order terminating his parental rights to his daughter, A.V.   He contends that the circuit court erroneously exercised its discretion when it found N.D. in default on the grounds phase without first hearing evidence that grounds existed and without making a finding that N.D.'s absence was egregious.   N.D. also claims that he was deprived of his right to counsel, specifically with regard to moving to vacate the default judgment. He asserts that he never waived his right to counsel.   Because the Record fails to demonstrate that N.D. waived his right to counsel, this court reverses the order and remands the matter for further proceedings.

## I. BACKGROUND

¶2    In July 2020, Winnebago County Department of Human Services petitioned to terminate N.D.'s (the father) and B.V.'s (the mother) parental rights to A.V.[3]   With respect to N.D., the County alleged four grounds existed to terminate his parental rights:  (1) abandonment; (2) child in need of protection or services (CHIPS); (3) a court order denying N.D.'s scheduled placement time; and (4) failure to assume parental responsibility.   Both parents contested the petition, but circumstances repeatedly delayed the prompt disposition of the matter.   After issues related to discovery resolved, the County filed a motion for summary judgment in June 2021, asserting that no material factual issues existed regarding grounds for terminating N.D.'s rights.   Specifically, the County alleged that

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For readability, this opinion uses first and last initials only.

[3] This appeal concerns only N.D.

pursuant to a court order, N.D. was denied visitation with A.V. for two and one-half years. In July 2021, N.D. opposed the summary judgment motion, claiming it was untimely. At the August 2021 summary judgment hearing, N.D.'s counsel moved to withdraw before the court heard the motion. After some discussion with N.D. about whether it was best for his counsel to withdraw, N.D. confirmed that was what he wanted. The circuit court allowed the attorney to withdraw and instructed N.D. to contact the State Public Defender to see if it would appoint successor counsel.

¶3    The circuit court did not decide the summary judgment motion at the August 2021 hearing. Instead, it postponed ruling on the motion until N.D. had new counsel and set a new hearing for September 22, 2021. N.D. agreed to this date;[4] however, on September 22, 2021, N.D. did not appear for the hearing. The County asked for a default judgment against N.D. on grounds based on his failure to appear, and the circuit court granted the motion. The circuit court did not take any evidence as to the grounds that existed to terminate N.D.'s parental rights prior to entering the default and did not make a finding on egregiousness.

¶4    N.D. also failed to appear for the following hearing in October 2021. However, he did appear at the next hearing in November 2021, where he told the circuit court that the mailed notice of the September 2021 hearing had been sent to his old address, and as a result, he did not receive it until after the hearing had already occurred.[5] The circuit court advised N.D. that he had been found in

---

[4] The Record clearly reflects that, during the August 21st hearing, N.D. agreed to this date, despite his argument to the circuit court that no date was selected at that hearing.

[5] It is unclear from the Record whether the court sent N.D. a hearing notice for the October 2021 hearing, whether N.D. received a hearing notice for that hearing, or whether N.D. was even aware of the October 2021 hearing at all.

default at the September 2021 hearing because he failed to appear. The court informed N.D. that the State Public Defender had deemed him eligible for appointment of another attorney and that he should contact the State Public Defender. In January 2022, the State Public Defender appointed new counsel for N.D., who appeared with N.D. at the March 3, 2022 pretrial hearing. A few days later, counsel filed proposed jury instructions but also filed a motion to withdraw based on N.D.'s request. In support of the motion, counsel claimed irreconcilable differences and disagreements with N.D. over the law and legal strategy.

¶5     The court held another pretrial hearing on April 14, 2022, at which N.D.'s counsel appeared in court, and N.D. appeared by video from Green Lake County Jail. N.D.'s attorney again asked to withdraw. N.D. objected, however, and indicated that he had changed his mind and wanted to keep his counsel. Counsel explained he could not continue to represent N.D. because N.D. had been "extremely adversarial," and counsel could no longer effectively represent him. The County did not object to counsel's withdrawal, advising the court that because N.D. had been defaulted as to grounds, he would not need an attorney until the dispositional hearing, where N.D. was entitled to an attorney. N.D. then asked the court for appeal paperwork as to the court's default finding, again repeating that the letter noticing the September hearing came four days after the hearing occurred.

¶6     The jury trial on the grounds phase for the mother was scheduled for April 19, 2022. On that date, N.D. refused transport from jail to attend the hearing in person and instead asked to appear by video. The circuit court declined the request, ultimately postponing the April 19th hearing for reasons not relevant to this appeal. The circuit court rescheduled the mother's jury trial as to grounds for August 2, 2022, and N.D. appeared pro se on that date. He again argued with the

circuit court, insisting it was error to find him in default on grounds based on his claim that the court sent the notice to the wrong address. N.D. walked out of the courtroom before the hearing concluded.[6]

¶7     The circuit court held the dispositional hearing in September 2022. N.D. again appeared pro se. There is no indication that the court addressed N.D.'s right to counsel or engaged in any type of colloquy with N.D. about waiving his right to counsel.

¶8     Before taking dispositional hearing testimony, the circuit court heard N.D.'s pro se motion to vacate the default judgment. There is nothing in the transcript discussing N.D.'s right to counsel or a waiver thereof. The circuit court denied N.D.'s motion as untimely. The County then introduced testimony to establish that grounds existed to terminate N.D.'s rights as well as testimony to establish that the best interests of the child required termination of parental rights (TPR). After hearing the testimony, the circuit court found it was in the child's best interests to terminate N.D.'s parental rights. The order terminating parental rights listed the grounds for termination of N.D.'s parental rights as abandonment, CHIPS, and continued denial of placement/visitation.

¶9     N.D. appeals.

---

[6] The mother ultimately withdrew her contested position with respect to the grounds phase, and the circuit court ultimately took evidence with respect to the grounds for terminating her parental rights at the August 2022 hearing.

## II. DISCUSSION

¶10 N.D. claims the circuit court made two errors. First, he says the circuit court erred when it found him in default at the grounds phase for failing to appear for the September 2021 hearing. N.D. claims the circuit court, prior to granting default judgment, failed to take evidence establishing that grounds existed to terminate N.D.'s parental rights, which *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶¶29-35, 246 Wis. 2d 1, 629 N.W.2d 768, requires, as well as that the circuit court failed to make any findings as to whether his absence was egregious. *See Industrial Roofing Servs., Inc. v. Marquardt*, 2007 WI 19, ¶¶41, 43, 299 Wis. 2d 81, 726 N.W.2d 898 (Default sanction requires conduct that is "egregious[] or in bad faith."). Second, he says he was deprived of his right to counsel because he had to argue the motion seeking to vacate the default judgment pro se. He asserts that he did not waive his right to counsel. Because this Record fails to demonstrate that N.D. waived his right to counsel, which is dispositive, this court addresses only the second argument.[7]

¶11 N.D. claims he was deprived of his right to counsel. "Termination of parental rights permanently extinguishes 'all rights, powers, privileges, immunities, duties and obligations existing between parent and child.'" *Steven V. v. Kelley H.*, 2004 WI 47, ¶21, 271 Wis. 2d 1, 678 N.W.2d 856 (quoting WIS. STAT. § 48.40(2)). Consequently, "[p]arental rights termination adjudications are

---

[7] Because the right to counsel issue is dispositive, it is not necessary for this court to address the default issue. This court notes, however, that when a circuit court finds a parent in default on grounds, it still must take "evidence sufficient to establish the grounds alleged in the [termination] petition[]." *Dane Cnty. DHS v. Mable K.*, 2013 WI 28, ¶52, 346 Wis. 2d 396, 828 N.W.2d 198. Any failure to do so is subject to a harmless error analysis as set forth in *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶¶25-27, 246 Wis. 2d 1, 629 N.W.2d 768.

among the most consequential of judicial acts, involving as they do 'the awesome authority of the State to destroy permanently all legal recognition of the parental relationship.'" **Steven V.**, 271 Wis. 2d 1, ¶21 (quoting **Evelyn C.R.**, 246 Wis. 2d 1, ¶20).

¶12 "A parent's interest in the parent-child relationship and in the care, custody, and management of his or her child is recognized as a fundamental liberty interest protected by the Fourteenth Amendment." **Steven V.**, 271 Wis. 2d 1, ¶22. Indeed,

> [t]he [Supreme] Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed "essential,"[8] "basic civil rights of man,"[9] and "[r]ights far more precious ... than property rights[.]"[10] "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."[11]

**Stanley v. Illinois**, 405 U.S. 645, 651 (1972) (omission in original); *see also* **Steven V.**, 271 Wis. 2d 1, ¶¶21-22. Thus, "[w]hen the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." **Santosky v. Kramer**, 455 U.S. 745, 753–54 (1982).

¶13 A parent facing an involuntary termination of parental rights is entitled to representation of counsel. WIS. STAT. § 48.23(2)(b); *see also* **A.S. v.**

---

[8] **Meyer v. Nebraska**, 262 U.S. 390, 399 (1923).

[9] **Skinner v. Oklahoma**, 316 U.S. 535, 541 (1942).

[10] **May v. Anderson**, 345 U.S. 528, 533 (1953).

[11] **Prince v. Massachusetts**, 321 U.S. 158, 166 (1944).

*State*, 168 Wis. 2d 995, 1004-05, 485 N.W.2d 52 (1992) (explaining the right to counsel must be *effective* and adopting the test set forth in ***Strickland v. Washington***, 466 U.S. 668 (1984), for TPR proceedings). The statutory right to counsel is "[o]ne of the procedural safeguards the legislature has afforded to parents in [TPR] proceedings," and this right "'is unequivocal: A parent has the right to representation in court unless there is a waiver[.]'" ***State v. Shirley E.***, 2006 WI 129, ¶¶30, 35, 298 Wis. 2d 1, 724 N.W.2d 623 (citation omitted). "[A] parent's statutory right to an attorney is preserved even after the entry of a default judgment." ***Dane Cnty. DHS v. Mable K.***, 2013 WI 28, ¶49, 346 Wis. 2d 396, 828 N.W.2d 198.

¶14 WISCONSIN STAT. § 48.23(2)(b) recognizes two circumstances wherein a parent may waive his right to counsel. First, a parent over the age of eighteen "can waive the assistance of counsel, but only if the circuit court finds that the waiver is knowing and voluntary." *Shirley E.*, 298 Wis. 2d 1, ¶30; § 48.23(2)(b) (a "parent who appears before the court" in a TPR proceeding "shall be represented by counsel," unless the parent is over the age of eighteen and "knowingly and voluntarily" waives counsel). Second, a parent may waive his right to counsel under § 48.23(2)(b)3, which provides:

> Notwithstanding subd. 1., a parent 18 years of age or over is presumed to have waived his or her right to counsel and to appear by counsel if the court has ordered the parent to appear in person at any or all subsequent hearings in the proceeding, *the parent fails to appear in person as ordered, and the court finds that the parent's conduct in failing to appear in person was egregious and without clear and justifiable excuse.* Failure by a parent 18 years of age or over to appear in person at consecutive hearings as ordered is presumed to be conduct that is egregious and without clear and justifiable excuse. If the court finds that a parent's conduct in failing to appear in person as ordered was egregious and without clear and justifiable excuse, the court may not hold a dispositional hearing on the contested

> adoption or involuntary termination of parental rights until at least 2 days have elapsed since the date of that finding.

(Emphasis added.)

¶15 "The statutory right to the assistance of counsel in a [TPR] proceeding is … essential to a fair proceeding." *Shirley E.*, 298 Wis. 2d 1, ¶60. Counsel is similarly "viewed as essential to fair proceedings" in criminal matters, and "when a litigant has been totally deprived of the presence and assistance of an attorney *during a critical stage in the proceeding*, reversal is automatic." *Id.*, ¶61 (emphasis added). "Courts have long recognized that the total deprivation of counsel in criminal proceedings is a 'structural error.'" *Id.*, ¶62. Structural errors "affect '[t]he entire conduct of the trial from beginning to end.' An error also may be structural because of the difficulty of determining how the error affected the trial." *State v. Pinno*, 2014 WI 74, ¶49, 356 Wis. 2d 106, 850 N.W.2d 207 (alteration in original; citation omitted); *see also Neder v. United States*, 527 U.S. 1, 8 (1999). "Whether a particular error is structural and therefore not subject to a harmless error review is a question of law" this court reviews independently. *State v. Nelson*, 2014 WI 70, ¶18, 355 Wis. 2d 722, 849 N.W.2d 317; *State v. C.L.K.*, 2019 WI 14, ¶12, 385 Wis. 2d 418, 922 N.W.2d 807.

¶16 The County, relying on WIS. STAT. § 48.23(2)(b)3, argues that N.D. waived his right to counsel.[12] As set forth above, N.D. may waive his right to counsel under § 48.23(2)(b)3 if he "fails to appear in person as ordered, *and the court finds that the parent's conduct in failing to appear in person was egregious and without clear and justifiable excuse.*" (Emphasis added). The statutory language plainly states that two things must happen to effect waiver under this provision.[13] First, the parent must fail to appear for court as ordered, and second, the circuit court must find that the parent's failure to appear was *both* egregious *and* without clear and justifiable excuse.

¶17 The County's brief argues that the circuit court did not err in "finding a waiver of N.J.D.'s statutory right to counsel following his default" as set forth in WIS. STAT. § 48.23(2)(b)3. But, at no point in the Record does it appear that the circuit court ever discussed whether N.D. had waived his right to counsel during any stage of this proceeding, whether explicitly or by his conduct. This court sees nothing in the Record showing that the circuit court made any *finding* that N.D. waived his right to counsel. To the contrary, the circuit court

---

[12] As noted, a parent in a TPR proceeding can also waive his right to counsel under WIS. STAT. § 48.23(2)(b)1. To waive the right to counsel under § 48.23(2)(b)1, the circuit court must make a finding that the parent "knowingly and voluntarily" waived his right to counsel. There is nothing in the Record to support a subsec. (2)(b)1 waiver here as there is no discussion between N.D. and the circuit court about waiving counsel. There is also no written waiver form suggesting that N.D. knowingly and voluntarily waived his right to counsel under this subsection. In fact, the last mention of counsel for N.D. during the course of these proceedings occurred at the April 14, 2022 hearing when the circuit court granted N.D.'s second attorney's request to withdraw over N.D.'s objection: "If we did get to the dispositional phase *he would have the right to counsel at that time which can be addressed at a later time*. So I will permit [N.D.'s attorney] to withdraw as counsel." (Emphasis added.)

[13] *See State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" (citation omitted)).

specifically acknowledged at the April 2022 hearing that N.D. would have "the right to counsel" at the dispositional phase despite having been found in default as to grounds and that this issue could "be addressed at a later" hearing. And yet, at the dispositional hearing, which occurred in September 2022, there was no mention of N.D.'s right to counsel or whether he waived that right at all—despite N.D. having appeared at that hearing pro se.[14] The County does not cite to any part of the Record to support its claim that the circuit court found that N.D. waived his right to counsel.

¶18 There is no question, however, that the first part of the WIS. STAT. § 48.23(2)(b)3 waiver test is met—N.D. clearly failed to appear for the September 2021 hearing as ordered by the court. It is the second part of the test that is missing. As noted, the Record is devoid of *any* finding that N.D.'s failure to appear on that date was either egregious *or* without a clear and justifiable excuse—let alone both. And while § 48.23(2)(b)3 does set forth a presumption that a parent's failure "to appear in person at *consecutive* hearings as ordered is presumed to be conduct that is egregious and without clear and justifiable excuse[,]" *id.* (emphasis added), the circuit court here entered default after N.D. missed just *one* hearing—*not* consecutive hearings—and therefore that

---

[14] There also does not appear to have been any hearing between the April 2022 hearing and the September 2022 hearing at which the circuit court addressed the right-to-counsel/waiver-of-counsel issue.

presumption did not apply at the time the circuit court entered the default against N.D.[15]

¶19    N.D.'s refusal to attend the mother's April 2022 grounds hearing, despite the County's suggestion to the contrary, also does not necessarily constitute egregiousness for the purpose of the waiver-of-counsel issue because N.D. asked to appear by video, which he had been allowed to do in the past. Moreover, he was not required to attend that hearing because it pertained solely to the mother.  And, in any event, that hearing ultimately did not occur because the circuit court postponed it, and not attending a hearing that did not even take place certainly cannot be considered egregious conduct.

¶20    Moreover, despite N.D.'s above-referenced absences, the Record demonstrates that N.D. was *not* a parent who repeatedly missed court appearances during the pendency of this proceeding.  To the contrary, the Record indicates that N.D. appeared at every hearing prior to the one in September 2021.  The Record reflects that N.D. attempted to present information to the circuit court providing a potentially justifiable excuse for his September 2021 absence—namely, that the hearing notice the court sent to N.D. for the September 2021 hearing did not reach him until four days after the hearing due to a change of address.  In addition, having missed the September 2021 hearing, N.D. would not have been aware of the October 2021 hearing date absent having timely received a hearing notice, and it is unclear whether the court ever sent such notice to N.D. or whether N.D.

---

[15] There is also nothing in the Record that suggests the circuit court relied on this presumption after N.D. missed the October 2021 hearing, which was the second consecutive hearing N.D. missed.  Moreover, and as previously noted, it is not clear whether N.D. was even aware of the October 2021 hearing given he did not appear at the September 2021 hearing.  His lack of awareness may have constituted a "clear and justifiable excuse" for the absence.

received timely notice of that hearing. The Record also reflects that aside from the two missed hearings, N.D. continued to actively participate throughout the remainder of this protracted litigation.

¶21 Despite the lack of any finding that the above-mentioned conduct constituted egregious conduct or that such conduct lacked a "clear and justifiable excuse" under WIS. STAT. § 48.23(2)(b)3, the County argues that this court should essentially make those factual findings on behalf of the circuit court based on N.D.'s failure to appear for the September 2021 and October 2021 hearings and his subsequent refusal to attend the April 2022 hearing in person. This court, however, does not make factual findings and therefore declines the County's invitation to do so. *See, e.g.*, ***Wurtz v. Fleischman***, 97 Wis. 2d 100, 108, 293 N.W.2d 155 (1980); ***State v. Lange***, 158 Wis. 2d 609, 627, 463 N.W.2d 390 (Ct. App. 1990) ("[W]e do not make factual findings[.]").

¶22 Based on all of the foregoing, this court sees no basis to conclude that N.D. waived his right to counsel. The legislature has provided two ways in which a parent facing involuntary termination of parental rights may waive his right to counsel, both of which require the circuit court to make explicit findings. Specifically, a circuit court must either: (1) find the parent knowingly and voluntarily waived his right to counsel; or (2) find that the parent's failure to appear in person as ordered constituted egregious conduct for which there is no clear and justifiable excuse. *See* WIS. STAT. § 48.23(2)(b)1, (2)(b)3. The circuit court made neither finding here, and it is not this court's role to do so.

Accordingly, this court concludes that N.D. did not waive his right to counsel.[16] Because N.D. is legally entitled to counsel unless he waives that right and because the violation of his right to counsel occurred at a critical stage of the TPR proceeding, this court reverses the order terminating N.D.'s parental rights and remands the matter for further proceedings.[17]

---

[16] Even if N.D. had waived his right to counsel under WIS. STAT. § 48.23(2)(b)1 or was presumed to have waived his right to counsel under § 48.23(2)(b)3, N.D. also had a right to counsel as to his motion seeking reconsideration of the default. *See* § 48.23(2)(c). Specifically, § 48.23(2)(c) states:

> In a proceeding to vacate or reconsider a default judgment granted in an involuntary termination of parental rights proceeding, a parent who has waived counsel under par. (b)1. or who is presumed to have waived counsel under par. (b)3. in the involuntary termination of parental rights proceeding *shall be represented by counsel, unless in the proceeding to vacate or reconsider the default judgment the parent waives counsel* as provided in par. (b)1. or is presumed to have waived counsel as provided in par. (b)3.

(Emphasis added). Here, N.D. filed a pro se motion "to Dismiss Default Judgement"—which was effectively a motion asking the circuit court to either vacate or reconsider the default as to grounds—and the court addressed that motion at the September 2022 dispositional hearing. At no point during that proceeding was there *any* discussion of whether N.D. waived his right to counsel as to that motion, nor did the circuit court make any finding that N.D. had explicitly or presumptively waived his right to counsel *in that proceeding*. Consequently, even if N.D. had previously waived his right to counsel, there was a violation of his right to counsel in regard to the proceeding wherein the court addressed his motion regarding the default.

[17] This court acknowledges that our supreme court has recognized a criminal defendant may forfeit his constitutional right to representation by his conduct. *See State v. Suriano*, 2017 WI 42, ¶1, 374 Wis. 2d 683, 893 N.W.2d 543. Assuming without deciding that the same principle applies to the statutory right to counsel in a TPR case, this Record does not contain any such finding of forfeiture by the circuit court. In fact, the Record suggests the opposite—that despite the withdrawal of N.D.'s two appointed attorneys, the circuit court indicated N.D. would have the right to another attorney.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.